**BROWN KWON & LAM LLP**
Angela Kwon, Esq. (AK7296)
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
akwon@bkllawyers.com
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIOLETA MARKOVIC,<br>and DARKO ILIC,<br>*on behalf of themselves and others similarly situated*,<br><br>                  Plaintiffs,<br><br>    - against -<br><br>MILOS HY, INC.<br>      d/b/a ESTIATORIO MILOS<br>      d/b/a MILOS WINE BAR,<br>MILOS, INC.<br>      d/b/a ESTIATORIO MILOS,<br>COSTAS SPILIADIS,<br>CONSTANTINOS SPILIADIS,<br>EVRIDIKI SPILIADIS,<br>GEORGE SPILIADIS,<br>DAVID DANGOOR,<br>and IOANNA SOURIAS,<br><br>                 Defendants. | No: 1:22-cv-1412<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT** |

Plaintiffs Violeta Markovic and Darko Ilic ("Plaintiffs"), individually and on behalf of all others similarly situated, upon personal knowledge as to themselves, and upon information and belief as to other matters, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants Milos HY, Inc. d/b/a Estiatorio Milos d/b/a Milos Wine Bar, Milos, Inc. d/b/a Estiatorio Milos (collectively, "Corporate Defendants"), Costas

1

Spiliadis, Constantinos Spiliadis, Evridiki Spiliadis, George Spiliadis, David Dangoor and Ioanna Sourias (collectively, "Individual Defendants," and together with Corporate Defendants, "Defendants") and allege as follows:

## <u>INTRODUCTION</u>

1.      Plaintiffs bring this action on behalf of themselves and similarly situated workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), seeking from Defendants: (1) unpaid minimum wage due to invalid tip credit, (2) misappropriated tips, (3) liquidated damages, and (4) attorneys' fees and costs.

2.      Plaintiffs also bring this action on behalf of themselves and similarly situated workers pursuant to the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, the supporting New York State Department of Labor Regulations, and the Federal Rule of Civil Procedure 23 ("Rule 23"), seeking from Defendants: (1) unpaid minimum wage due to invalid tip credit, (2) unpaid spread-of-hours premium, (3) misappropriated tips, (4) statutory penalties, (5) liquidated damages, and (6) attorneys' fees and costs.

3.      Plaintiff Violeta Markovic further alleges, pursuant to the New York State Human Rights Law, New York State Executive Law, Article 15 §§ 290 *et seq.* ("NYSHRL"), and New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), that Defendants engaged in discrimination and retaliation against Plaintiff on the basis of sex, and for asserting her rights to be free from discrimination including sexual harassment. Plaintiff Markovic seeks declaratory, injunctive and equitable relief, and monetary damages, including (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

5.      This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6.      This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

### *Plaintiffs*

### *Violeta Markovic*

8.      Plaintiff Violeta Markovic is an adult who resides in Hillsborough County, Florida.

9.      Plaintiff Violeta Markovic was a covered employee within the meaning of the FLSA and NYLL.

10.      Plaintiff Violeta Markovic retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and has agreed to pay the firm a reasonable fee for its services.

### *Darko Ilic*

11.      Plaintiff Darko Ilic is an adult who resides in Miami-Dade County, Florida.

12.      Plaintiff Darko Ilic was a covered employee within the meaning of the FLSA and NYLL.

13.     Plaintiff Darko Ilic retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and has agreed to pay the firm a reasonable fee for its services.

***Defendants***

14.     At all relevant times, Defendants owned and operated an enterprise comprised of three (3) Greek restaurants under the common trade name "Milos" with addresses as follows:

    a.   125 West 55th Street, New York, NY 10019 ("Estiatorio Milos Midtown"); and

    b.   20 Hudson Yards (500 West 33rd Street), 5th Floor, New York, NY 10001 ("Estiatorio Milos Hudson Yards" and "Milos Wine Bar")

    (collectively, "Milos Restaurants").

15.     At all relevant times, Defendants owned and operated Milos Restaurants as a single integrated enterprise. Specifically, Defendants had a common business purpose, shared common ownership and management, engaged in interrelated operations, and have centralized control of labor relations.

16.     Milos Restaurants are engaged in the same business of operating Greek restaurants in New York City.

17.     Milos Restaurants are commonly owned and operated by Individual Defendants.

18.     Milos Restaurants share a common trade name, logo, décor and appearance.

19.     Milos Restaurants serve similar menu items and share common ingredients.

20.     Milos Restaurants are jointly advertised on Defendants' website. See **Exhibit A**, Defendants' website (https://www.estiatoriomilos.com/NewYork).

21.     Milos Restaurants implement the same wage and hour policies and practices established by Individual Defendants.

22.    At all relevant times, employees, food and supplies were interchangeable and freely transferred among Milos Restaurants.

23.    At all relevant times, Accordingly, Plaintiffs and similarly situated employees Milos Restaurants were subject to the same wage and hour policies and practices.

24.    At all relevant times, Defendants jointly employed Plaintiffs and similarly situated employees.

25.    At all relevant times, each Defendant had substantial control over Plaintiffs' and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

26.    At all relevant times, Defendants were and continue to be employers within the meaning of the FLSA and NYLL.

***Milos HY, Inc.***

27.    Corporate Defendant Milos HY, Inc. is a domestic business corporation organized under the laws of the State of New York with a principal place of business located at 20 Hudson Yards, 5th Floor, 500 West 33rd Street, New York, NY 10001 and an address for service of process located at c/o Davis & Gilbert LLP, 1740 Broadway, New York, NY 10019.

28.    At all relevant times, Defendants operated Estiatorio Milos Hudson Yards and Milos Wine Bar through Corporate Defendant Milos HY, Inc.

29.    At all relevant times, Corporate Defendant Milos HY, Inc. had an annual dollar volume of sales in excess of $500,000.

30.    Corporate Defendant Milos HY, Inc. is a covered "employer" within the meaning of the FLSA and NYLL.

31.     At all relevant times, Corporate Defendant Milos HY, Inc. employed Plaintiffs and similarly situated employees at Milos Restaurants.

32.     At all relevant times, Corporate Defendant Milos HY, Inc. maintained control, oversight, and direction over Plaintiffs and similarly situated employees at Milos Restaurants, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

33.     At all relevant times, Corporate Defendant Milos HY, Inc. applied the same employment policies, practices, and procedures to all non-exempt employees at Milos Restaurants.

34.     Milos HY, Inc. is listed as the payor on pay stubs received by employees of Estiatorio Milos Hudson Yards and Milos Wine Bar.

*Milos, Inc.*

35.     Corporate Defendant Milos, Inc. is a domestic business corporation organized under the laws of the State of New York with a principal place of business located at 125 West 55th Street, New York, NY 10019 and an address for service of process located at c/o Edward Morrison, 54 Weaver Road, Elizaville, NY 12523.

36.     At all relevant times, Defendants operated Estiatorio Milos Midtown through Corporate Defendant Milos, Inc.

37.     At all relevant times, Corporate Defendant Milos, Inc. had an annual dollar volume of sales in excess of $500,000.

38.     Corporate Defendant Milos, Inc. is a covered "employer" within the meaning of the FLSA and NYLL.

39.     At all relevant times, Corporate Defendant Milos, Inc. employed Plaintiffs and similarly situated employees at Milos Restaurants.

40.     At all relevant times, Corporate Defendant Milos, Inc. maintained control, oversight, and direction over Plaintiffs and similarly situated employees at Milos Restaurants, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

41.     At all relevant times, Corporate Defendant Milos, Inc. applied the same employment policies, practices, and procedures to all non-exempt employees at Milos Restaurants.

42.     Milos, Inc. is listed as the payor on pay stubs received by employees of Estiatorio Milos Midtown.

*Costas Spiliadis*

43.     At all relevant times, Individual Defendant Costas Spiliadis has been an owner and operator of Milos Restaurants.

44.     At all relevant times, Costas Spiliadis has been a principal of each of the Corporate Defendants.

45.     At all relevant times, Costas Spiliadis has had the power to (i) fire and hire employees, (ii) set their work schedules, (iii) determine their rate and method of pay, and (iv) otherwise control the terms and conditions of their employment at Milos Restaurants.

46.     At all relevant times, Costas Spiliadis has had the power to hire, fire, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiffs and similarly situated employees at Milos Restaurants.

47.     At all relevant times, Costas Spiliadis has had the power to maintain employment records, including time and/or wage records of employees at Milos Restaurants.

48.     At all relevant times, Costas Spiliadis has been actively involved in managing the day to day operations of Milos Restaurants.

49.     At all relevant times, Costas Spiliadis has had authority over personnel or payroll decisions and employment policies, practices and procedures at Milos Restaurants.

50.     At all relevant times, Costas Spiliadis has had the power to prevent or stop any unlawful pay practices that harmed Plaintiffs and similarly situated employees.

51.     Costas Spiliadis is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiffs and similarly situated employees.

### *Constantinos Spiliadis*

52.     At all relevant times, Individual Defendant Constantinos Spiliadis has been an owner and operator of Milos Restaurants.

53.     At all relevant times, Constantinos Spiliadis has been a principal of each of the Corporate Defendants.

54.     At all relevant times, Constantinos Spiliadis has had the power to (i) fire and hire employees, (ii) set their work schedules, (iii) determine their rate and method of pay, and (iv) otherwise control the terms and conditions of their employment at Milos Restaurants.

55.     At all relevant times, Constantinos Spiliadis has had the power to hire, fire, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiffs and similarly situated employees at Milos Restaurants.

56.     At all relevant times, Constantinos Spiliadis has had the power to maintain employment records, including time and/or wage records of employees at Milos Restaurants.

57.     At all relevant times, Constantinos Spiliadis has been actively involved in managing the day to day operations of Milos Restaurants.

58.     At all relevant times, Constantinos Spiliadis has had authority over personnel or payroll decisions and employment policies, practices and procedures at Milos Restaurants.

59.    At all relevant times, Constantinos Spiliadis has had the power to prevent or stop any unlawful pay practices that harmed Plaintiffs and similarly situated employees.

60.    Constantinos Spiliadis is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiffs and similarly situated employees.

***Evridiki Spiliadis***

61.    At all relevant times, Individual Defendant Evridiki Spiliadis has been an owner and operator of Milos Restaurants.

62.    At all relevant times, Evridiki Spiliadis has been a principal of each of the Corporate Defendants.

63.    At all relevant times, Evridiki Spiliadis has had the power to (i) fire and hire employees, (ii) set their work schedules, (iii) determine their rate and method of pay, and (iv) otherwise control the terms and conditions of their employment at Milos Restaurants.

64.    At all relevant times, Evridiki Spiliadis has had the power to hire, fire, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiffs and similarly situated employees at Milos Restaurants.

65.    At all relevant times, Evridiki Spiliadis has had the power to maintain employment records, including time and/or wage records of employees at Milos Restaurants.

66.    At all relevant times, Evridiki Spiliadis has been actively involved in managing the day to day operations of Milos Restaurants.

67.    At all relevant times, Evridiki Spiliadis has had authority over personnel or payroll decisions and employment policies, practices and procedures at Milos Restaurants.

68.    At all relevant times, Evridiki Spiliadis has had the power to prevent or stop any unlawful pay practices that harmed Plaintiffs and similarly situated employees.

69.     Evridiki Spiliadis is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiffs and similarly situated employees.

***George Spiliadis***

70.     At all relevant times, Individual Defendant George Spiliadis has been an owner and operator of Milos Restaurants.

71.     At all relevant times, George Spiliadis has been a principal of each of the Corporate Defendants.

72.     At all relevant times, George Spiliadis has had the power to (i) fire and hire employees, (ii) set their work schedules, (iii) determine their rate and method of pay, and (iv) otherwise control the terms and conditions of their employment at Milos Restaurants.

73.     At all relevant times, George Spiliadis has had the power to hire, fire, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiffs and similarly situated employees at Milos Restaurants.

74.     At all relevant times, George Spiliadis has had the power to maintain employment records, including time and/or wage records of employees at Milos Restaurants.

75.     At all relevant times, George Spiliadis has been actively involved in managing the day to day operations of Milos Restaurants.

76.     At all relevant times, George Spiliadis has had authority over personnel or payroll decisions and employment policies, practices and procedures at Milos Restaurants.

77.     At all relevant times, George Spiliadis has had the power to prevent or stop any unlawful pay practices that harmed Plaintiffs and similarly situated employees.

78.     George Spiliadis is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiffs and similarly situated employees.

### *David Dangoor*

79.     At all relevant times, Individual Defendant David Dangoor has been an owner and operator of Milos Restaurants.

80.     At all relevant times, David Dangoor has been a principal of each of the Corporate Defendants.

81.     At all relevant times, David Dangoor has had the power to (i) fire and hire employees, (ii) set their work schedules, (iii) determine their rate and method of pay, and (iv) otherwise control the terms and conditions of their employment at Milos Restaurants.

82.     At all relevant times, David Dangoor has had the power to hire, fire, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiffs and similarly situated employees at Milos Restaurants.

83.     At all relevant times, David Dangoor has had the power to maintain employment records, including time and/or wage records of employees at Milos Restaurants.

84.     At all relevant times, David Dangoor has been actively involved in managing the day to day operations of Milos Restaurants.

85.     At all relevant times, David Dangoor has had authority over personnel or payroll decisions and employment policies, practices and procedures at Milos Restaurants.

86.     At all relevant times, David Dangoor has had the power to prevent or stop any unlawful pay practices that harmed Plaintiffs and similarly situated employees.

87.     David Dangoor is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiffs and similarly situated employees.

*Ioanna Sourias*

88.     At all relevant times, Individual Defendant Ioanna Sourias has been an owner and operator of Milos Restaurants.

89.     At all relevant times, Ioanna Sourias has been a principal of each of the Corporate Defendants.

90.     At all relevant times, Ioanna Sourias has had the power to (i) fire and hire employees, (ii) set their work schedules, (iii) determine their rate and method of pay, and (iv) otherwise control the terms and conditions of their employment at Milos Restaurants.

91.     At all relevant times, Ioanna Sourias has had the power to hire, fire, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiffs and similarly situated employees at Milos Restaurants.

92.     At all relevant times, Ioanna Sourias has had the power to maintain employment records, including time and/or wage records of employees at Milos Restaurants.

93.     At all relevant times, Ioanna Sourias has been actively involved in managing the day to day operations of Milos Restaurants.

94.     At all relevant times, Ioanna Sourias has had authority over personnel or payroll decisions and employment policies, practices and procedures at Milos Restaurants.

95.     At all relevant times, Ioanna Sourias has had the power to prevent or stop any unlawful pay practices that harmed Plaintiffs and similarly situated employees.

96.     Ioanna Sourias is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiffs and similarly situated employees.

## FLSA COLLECTIVE ACTION ALLEGATIONS

97.     Plaintiffs bring the First Cause of Action, the FLSA claims, on behalf of themselves and all similarly situated current and former non-exempt tipped employees (including but not limited to servers, runners, bussers, server assistants, bartenders, sommeliers and baristas) employed at Milos Restaurants owned, operated, and/or controlled by Defendants, from the date that is six (6) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter, and who elect to opt-in to this action ("FLSA Collective Members").

98.     At all relevant times, Plaintiffs and FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' common policies, practices, procedures and patterns with regards to their compensation, including their willful and repeated failure to pay Plaintiffs and FLSA Collective Members the full minimum wage for all hours worked up to forty (40) per workweek, and overtime wages for all hours worked in excess of forty (40) per workweek. In addition, Defendants unlawfully kept a portion of tips that Plaintiffs and FLSA Collective Members earned from customers, or distributed such tips to employees who are not entitled to receive tips under the FLSA. Plaintiffs' claims stated herein are essentially the same as those of the other FLSA Collective Members.

99.     All of the work that Plaintiffs and FLSA Collective Members have performed have been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and FLSA Collective Members have performed.

100.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage and overtime wages for all of the hours they work.

101.    For purposes of notice and other purposes related to this collective action, the names and contact information of FLSA Collective Members are readily available from Defendants' records.

## NEW YORK CLASS ACTION ALLEGATIONS

102.    Plaintiffs bring the Second Cause of Action, the NYLL claims, pursuant to Rule 23, on behalf of themselves and a class of persons consisting of all current and former tipped non-exempt employees (including but not limited to servers, runners, bussers, server assistants, bartenders, sommeliers and baristas) employed at Milos Restaurants owned, operated, and/or controlled by Defendants, from the date that is six (6) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter (the "Class" or "Class Members").

103.    Excluded from the Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

104.    The members of the Class are readily ascertainable. The number and identity of the Class Members are determinable from Defendants' payroll and personnel records. The hours assigned and worked, the positions held, and the rates of pay for each Class Member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this class action, their names and contact information are readily available from Defendants' records. Notice can be provided by means permissible under Rule 23.

105.    The potential number of Class Members is so numerous that joinder of all members is impracticable, and the disposition of their claims through this class action will benefit both the

14

parties and the Court. Although the precise number of Class Members is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

106.    Plaintiffs' claims are typical of those claims which could be alleged by any Class Member, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

107.    Plaintiffs and Class Members were subject to the same practices of Defendants, as alleged herein, of (i) failing to pay minimum wage due to invalid tip credit, (ii) failing to pay spread-of-hours pay, (iii) unlawfully keeping or distributing a portion of the tips to employees who are not entitled to receive tips, (iv) failing to provide proper wage notices, and (v) failing to provide proper wage statements, in violation of the NYLL.

108.    Plaintiffs and Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices and patterns of conduct. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member.

109.    Plaintiffs and Class Members have all sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures under the NYLL.

110.    Plaintiffs are able and willing to fairly and adequately protect the interests of Class Members, and have no interests antagonistic to Class Members.

111.    Plaintiffs are represented by attorneys who are competent, skilled, and experienced in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

112.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each individual Class Member are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for each Class Member to redress the wrongs done to them.

113.     On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of judicial and public resources; however, treating the claims as a class action would result in a significant saving of these costs. If appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

114.     The prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications with respect to each Class Member, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof.

115.     Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future

employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

116.     Common questions of law and fact exist as to Class Members that predominate over any questions only affecting Plaintiffs and individual Class Members and include, but are not limited to, the following:

   a.   Whether Defendants employed Plaintiffs and Class Members within the meaning of the NYLL;

   b.   Whether Defendants paid Plaintiffs and Class Members at the lawful minimum wage rate;

   c.   Whether Defendants took the proper amount of tip credit allowance from Plaintiffs and Class Members under the NYLL;

   d.   Whether Defendants provided proper notice to Plaintiffs and Class Members that Defendants were taking a tip credit;

   e.   Whether Defendants provided proper wage statements informing Plaintiffs and Class Members of the amount of tip credit taken for each pay period and other information required to be provided on wage statements;

   f.   Whether Defendants kept weekly records of the amount of tip credit allowance claimed from Plaintiffs and Class Members;

   g.   Whether Defendants required Plaintiffs and Class Members to perform non-tipped side work for more than two (2) hours or twenty percent (20%) of their workday;

   h.   Whether Defendants kept accurate records of the amounts of tips earned by Plaintiffs and Class Members;

   i.   Whether Defendants misappropriated tips from Plaintiffs and Class Members by keeping or distributing a portion of the tips to employees who are not entitled to receive tips under the NYLL;

   j.   Whether Defendants failed to pay Plaintiffs and Class Members the spread-of-hours pay for workdays exceeding ten (10) hours;

   k.   Whether Defendants failed to furnish Plaintiffs and Class Members with proper wage notices, as required by the NYLL; and

l.   Whether Defendants failed to furnish Plaintiffs and Class Members with proper wage statements with every payment of wages, as required by the NYLL.

### STATEMENT OF FACTS

#### *Unpaid Wages and Tips*

117.   Plaintiff Violeta Markovic was hired by Defendants on or around March 15, 2019 to work as a hostess at Estiatorio Milos Hudson Yards restaurant located at 20 Hudson Yards, Fifth Floor, 500 West 33rd Street, New York, NY 10001.

118.   Starting in or around June 2019 until the end of her employment with Defendants, Plaintiff Violeta Markovic performed dual jobs at the restaurant as a hostess and a server, splitting her schedule 50-50 between the two roles.

119.   Plaintiff Violeta Markovic's employment terminated on or around August 8, 2019.

120.   Throughout her employment with Defendants, Plaintiff Violeta Markovic regularly worked six (6) days per week for a total of sixty-five (65) hours per week, every week, as follows: (i) from 10:30 a.m. to 11:30 p.m. on four (4) days per week; (ii) from 10:30 a.m. to 3:30 p.m. on one (1) day per week; and (iii) from 5:00 p.m. to 1:00 a.m. on one (1) day per week.

121.   Throughout her employment with Defendants, Plaintiff Violeta Markovic performed nothing but non-tipped side work from 10:30 a.m. to 12:00 p.m. every workday for five days per week. In addition, Plaintiff Markovic performed at least thirty (30) to sixty (60) minutes of running non-tipped side work throughout her shifts every workday. Moreover, Plaintiff Markovic performed at least forty-five (45) minutes of non-tipped duties at the end of her shifts every workday. As a result, Plaintiff Markovic regularly performed at least two (2) to three (3) hours of non-tipped side work every workday throughout her employment with Defendants.

122.   Throughout her employment with Defendants, Plaintiff Violeta Markovic was paid $10.50 per hour as a server and $17.00 per hour as a hostess.

123.    Throughout Plaintiff Violeta Markovic's employment with Defendants, Defendants failed to keep accurate record of Plaintiff's time worked as server versus her time worked as a hostess, and frequently paid her $10.50 per hour for hours worked as a hostess without any tips.

124.    Plaintiff Darko Ilic was employed by Defendants as a sommelier at Estiatorio Milos Hudson Yards and Milos Wine Bar located at 20 Hudson Yards, Fifth Floor, 500 West 33rd Street, New York, NY 10001 from in or around February 2019 until on or around September 30, 2019.

125.    Throughout his employment with Defendants, Plaintiff Darko Ilic regularly worked five (5) to six (6) days per week for a total of approximately fifty (50) hours per week, every week. Specifically, Plaintiff Ilic worked a varied combination of a single shift, from 4:00 p.m. to 11:30 p.m., and double shifts, from 11:00 a.m. to 11:00 p.m., each week.

126.    Throughout his employment with Defendants, Plaintiff Darko Ilic regularly performed at least two (2) hours of non-tipped side work every workday.

127.    Throughout his employment with Defendants, Plaintiff Darko Ilic was paid $10.50 per hour.

128.    During their employment with Defendants, Plaintiffs regularly observed and spoke to employees who came from Estiatorio Milos Midtown to work at Estiatorio Milos Hudson Yards on a temporary or permanent basis. Similarly, Plaintiffs regularly observed and spoke to employees who were sent from Estiatorio Milos Hudson Yards to work at Estiatorio Milos Midtown on a temporary or permanent basis.

129.    Based on Plaintiffs' observations and conversations with co-workers, Defendants applied the same pay policies and practices at Milos Restaurants.

130. Based on Plaintiffs' observations and conversations with their co-workers at Milos Restaurants, FLSA Collective Members and Class Members worked hours similar to Plaintiffs' work hours.

131. Based on Plaintiffs' observations and conversations with their co-workers at Milos Restaurants, Defendants claimed a tip credit and paid Plaintiffs, FLSA Collective Members and Class Members at the same or similar hourly rates that were at all times less than New York's minimum wage.

132. Based on Plaintiffs' observations and conversations with co-workers at Milos Restaurants, Defendants paid wages to Plaintiffs, FLSA Collective Members and Class Members weekly by check with wage statements.

133. Throughout Plaintiffs' employment with Defendants, Plaintiffs and their tipped co-workers regularly observed discrepancies and irregularities in Defendants' tip records and the tip amounts distributed to tipped workers. For example, Plaintiffs regularly observed and spoke to other tipped workers complaining that the combined tips that Plaintiffs and other employees received from Defendants were less than the amount they collectively earned from the customers. In addition, Plaintiffs recall multiple instances when the tipped workers were not paid any tips and were told by the managers that the collected tips went "missing" from the restaurant's safe that was accessible to only the managers and owners.

134. Each time Plaintiffs or the other tipped workers requested to see Defendants' tip records and sought clarification on how Defendants calculated the tip amounts distributed to tipped employees, Defendants refused to produce Plaintiffs with such records or information. In fact, when the tipped workers complained about the discrepancies and underpayment of tips, the management threatened to "fire everyone and start over."

135.    As a result of Defendants' invalid tip policies and practices, Plaintiffs and other tipped employees at Milos Restaurants were not paid the full and proper tip amounts every week.

136.    Throughout their employment with Defendants, Plaintiffs were never paid the spread-of-hours premium when the interval between the beginning and the end of their workdays exceeded ten (10) hours. Based on Plaintiffs' observations and conversations with their co-workers at Milos Restaurants, other workers who had workdays that exceeded ten (10) hours similarly did not receive the spread-of-hours pay for such workdays.

137.    Throughout Plaintiffs' employment with Defendants, Plaintiffs did not receive proper notices of pay rate or pay day from Defendants at hire or before the changes in pay, as required under the NYLL. Specifically, Defendants' wage notices that were provided to Plaintiffs did not state their correct pay rate or tip credit rate.

138.    Throughout Plaintiffs' employment with Defendants, Plaintiffs did not receive proper wage statements from Defendants. Specifically, Defendants' wage statements that were provided to Plaintiffs did not state their correct pay rate or tip credit rate. Further, the amounts of tips listed on the wage statements were different from the amounts Plaintiffs earned each week.

139.    Based on Plaintiffs' observations and conversations with co-workers at Milos Restaurants, Defendants failed to pay Plaintiffs, FLSA Collective Members and Class Members the lawful minimum wage due to an invalid tip credit deduction.

140.    Based on Plaintiffs' observations and conversations with co-workers at Milos Restaurants, Plaintiffs, FLSA Collective Members and Class Members did not receive proper notice that Defendants were claiming a tip credit.

141.    Based on Plaintiffs' observations and conversations with co-workers at Milos Restaurants, Plaintiffs, FLSA Collective Members and Class Members did not receive notice

informing them that the tips they received must be retained by them except for a valid tip pooling arrangement, or that the tip credit taken by Defendants may not exceed the value of tips that they actually received.

142.    Based on Plaintiffs' observations and conversations with co-workers at Milos Restaurants, Defendants failed to provide proper wage statements informing Plaintiffs, FLSA Collective Members and Class Members of the amount of tip credit taken for each pay period. In addition, the wage statements that Defendants provided to Plaintiffs, FLSA Collective Members and Class Members failed to state the accurate amounts of tips earned by tipped employees.

143.    Based on Plaintiffs' observations and conversations with co-workers at Milos Restaurants, Defendants failed to track daily tips earned by Plaintiffs, FLSA Collective Members and Class Members, and failed to keep accurate records thereof.

144.    Based on Plaintiffs' observations and conversations with co-workers at Milos Restaurants, Plaintiffs, FLSA Collective Members and Class Members were required to engage more than two (2) hours and/or twenty percent (20%) of their workdays performing non-tipped side work, including pre-shift side work, running side work, and post-shift side work. These duties included, but were not limited to, moving supplies from the basement; polishing glassware; stocking stations with napkins, cups and plates; cleaning and organizing the stations; moving water buckets; cleaning menus; polishing silverware; setting tables; cleaning the restaurant; storing the restaurant's tablet computers; and other non-tipped activities.

145.    Based on Plaintiffs' observations and conversations with co-workers at Milos Restaurants, Defendants kept a portion of the tips earned by Plaintiffs, FLSA Collective Members and Class Members and/or distributed such tips to employees who do not customarily and regularly receive tips.

146.    Based on Plaintiffs' observations and conversations with their co-workers at Milos Restaurants, Defendants failed to pay Plaintiffs and Class Members the spread-of-hours pay for workdays such pay was due.

147.    Based on Plaintiffs' observations and conversations with co-workers at Milos Restaurants, Defendants failed to provide proper wage notices to Plaintiffs and Class Members. The wage notices that were provided to Plaintiffs and Class Members failed to accurately reflect their regular pay rate and tip credit rate.

148.    Based on Plaintiff's observations and conversations with co-workers at Milos Restaurants, Defendants failed to provide proper wage statements to Plaintiffs and Class Members. The wage statements that were provided to Plaintiffs and Class Members failed to accurately reflect their regular pay rate and tip credit rate, and failed to state other required information. In addition, the wage statements that were provided to Plaintiffs and Class Members failed to reflect the accurate amounts of tips they earned each week.

149.    Defendants knowingly and willfully operated their business with a policy of failing to pay the lawful minimum wage to Plaintiffs, FLSA Collective Members and Class Members, in violation of the FLSA and NYLL.

150.    Defendants knowingly and willfully operated their business with a policy of keeping a portion of the tips that Plaintiffs, FLSA Collective Members and Class Members earned from customers and/or distributing such tips to employees who are not entitled to receive tips under the FLSA and NYLL.

151.    Defendants knowingly and willfully operated their business with a policy of not paying the spread-of-hours pay to Plaintiffs and Class Members, in violation of the NYLL.

152.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices to Plaintiffs and Class Members pursuant to the requirements of the NYLL.

153.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiffs and Class Members pursuant to the requirements of the NYLL.

### *Sexual Harassment, Discrimination and Retaliation*

154.    Throughout her employment with Defendants, Plaintiff Violeta Markovic was subjected to persistent sexual harassment. Despite Plaintiff Markovic making complaints to the managers about the hostile work environment, Defendants failed to investigate or take corrective action. Instead, the managers actively retaliated against Plaintiff and terminated her employment.

155.    Throughout her employment with Defendants, the general managers at Milos Restaurants routinely directed Plaintiff Violeta Markovic and other hostesses to flirt and physically touch the male VIP customers at Milos Restaurants. Specifically, the general managers repeatedly instructed Plaintiff Markovic to "shake your ass" or sway her hips side to side when walking in front of the male customers. In addition, the general managers regularly ordered Plaintiff to make sure that she softly touches the male customers' arm and elbow while walking them to their table. Every time this happened, Plaintiff Markovic felt extremely uncomfortable and exploited, and feared that she would lose her job if she complained.

156.    When Plaintiff Markovic did not immediately comply with the general managers' commands concerning the male VIP customers or expressed her discomfort, they punished Plaintiff by giving her physically strenuous duties, bouncing her around from station to station,

and assigning her to undesirable and/or less lucrative stations within the restaurant. The other female hostesses who complied with such commands were not subject to similar adverse treatment.

157.    Moreover, throughout Plaintiff Markovic's employment with Defendants, Milos Restaurant had a culture where the general managers openly asked Plaintiff and other female employees about their personal life and made sexually inappropriate jokes and comments. For example, one of the general managers, George, pried about Plaintiff's dating life and made targeted comments about her appearance. Another general manager, Paul, often shared with Plaintiff his sexual fantasies as he pointed to servers in the restaurant that he found attractive and described that he wanted to do to them sexually. Plaintiff did not know how to respond to these unwanted crude comments and vulgar language pervasively used by the general managers at the restaurant.

158.    Throughout her employment with Defendants, Plaintiff Markovic was also sexually harassed by the non-managerial co-workers on a continuous basis. Every workweek, Plaintiff was catcalled by the male workers at Milos Restaurant, including whistles and unwelcomed sexual remarks, despite her repeated expression of discomfort. Such sexually inappropriate behavior at Milos Restaurant was condoned and fostered by the management.

159.    Furthermore, Plaintiff Violeta Markovic noticed several surveillance cameras in the locker room used by female employees at Milos Restaurant. Defendants had not told any of the female employees about the cameras. Plaintiff complained to the general managers, stating that she did not think it was right to surveil or record the female employees in the locker room without their knowledge. In response, the general managers insisted that the cameras were not operational. However, after Plaintiff reiterated her concerns in writing, Defendants posted a letter in the restaurant admitting that the cameras in the female locker room were functional and in use.

160.    In or around May 2019, general manager George, who was eager to please a male VIP customer Steven R., instructed Plaintiff Violeta Markovic to give the customer a massage, which was clearly not part of her job duties as a hostess or server and made her feel extremely uncomfortable. Plaintiff informed general managers, Stefan, CK and Elliot, of the incident and told them that she felt very uncomfortable. In response, the managers looked at each other, laughed out loud and joked, "George is old and doesn't know what he's saying," and brushed off her complaint. Defendants did not investigate or take any corrective action. Thus, the sexually hostile work environment continued at Milos Restaurant.

161.    Subsequently, Plaintiff Violeta Markovic approached general manager Elliot again regarding the incident with George and expressed that she felt uncomfortable being directed by the managers at Milos Restaurants to flirt and physically touch the male customers. Elliot became visibly irritated, and responded that he did not want to hear about it and told Plaintiff to go away. Again, Defendants did not investigate Plaintiff's complaint or take any action to correct the sexually hostile work environment.

162.    After her complaints to the managers, Plaintiff Markovic's work environment at Milos Restaurants deteriorated as the managers treated Plaintiff with increased hostility and scrutiny, which made her work life very difficult and stressful. The management did not treat other employees with similar hostility or scrutiny.

163.    On multiple occasions, Plaintiff Violeta Markovic attempted to speak to human resources regarding the sexual harassment and discriminatory work environment at Milos Restaurant. However, under the management's direction, the human resources repeatedly ignored and avoided Plaintiff's requests for a meeting.

164.    In or around June 2019, while Plaintiff Markovic was closing up and organizing the front desk at the end of her shift, general manager Stefan walked up and stood physically close to Plaintiff behind the desk, and started rubbing his crotch on her upper thigh. As Plaintiff immediately froze and stood still in shock, Stefan stopped and walked away. Plaintiff was terrified by this experience and felt completely helpless. Based on Defendants' prior inaction to Plaintiff's complaints and the workplace culture that condoned sexual and retaliatory behavior by the managers, Plaintiff feared that complaining to the management about Stefan would only result in further adverse employment action.

165.    In or around July 2019, Plaintiff Markovic spoke to the general manager Paul about the stress of being subjected to the managers' sexually inappropriate language and behavior. Soon after, Paul started incessantly following Plaintiff around in the restaurant, scrutinizing Plaintiff's work, constantly screaming at her and threatening her with write-ups and termination.

166.    After weeks of hostile, disparate treatment from the management, Defendants terminated Plaintiff Violeta Markovic's employment on or around August 8, 2019. Defendants informed Plaintiff that she was being terminated because she took a personal day. Although Plaintiff had given Defendants advance notice, Defendants stated that Plaintiff was fired because she did not give the two weeks' notice to take a personal day. This was a policy that Defendants had never enforced on any other employees, who were able to take personal days without two weeks' notice and continued to be employed without discipline.

167.    Defendants discriminated against Plaintiff Violeta Markovic by subjecting Plaintiff to disparate treatment, including a hostile work environment, on the basis of her sex. Defendants condoned workplace sexual harassment and failed to remedy their hostile work environment after Plaintiff's complaints.

168.    Defendants retaliated against Plaintiff Violeta Markovic for engaging in protected activities by making her work more difficult, increasing scrutiny, and terminating Plaintiff's employment after she made multiple complaints about Defendants' hostile work environment.

169.    Plaintiff Violeta Markovic suffered from severe emotional distress due to Defendants' hostile work environment. After Plaintiff reported the hostile work environment to the management, and requested to be free from sexual harassment, adverse action was taken against her, ultimately leading to her termination. As a direct result of Defendants' discriminatory and retaliatory actions, Plaintiff Violeta Markovic suffered, and continues to suffer harm.

## STATEMENT OF CLAIMS

### FIRST CAUSE OF ACTION
### *Unpaid Wages and Tips in Violation of the Fair Labor Standards Act*

170.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

171.    The minimum wage and overtime provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiffs and FLSA Collective Members.

172.    Defendants failed to pay Plaintiffs and FLSA Collective Members the full and proper minimum wage to which they are entitled under the FLSA.

173.    Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA because Defendants failed to inform Plaintiffs and tipped FLSA Collective Members of the provisions of subsection 203(m) of the FLSA.

174.    Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA because Defendants kept and/or distributed a portion of the tips earned

by Plaintiffs and tipped FLSA Collective Members to those who do not customarily and regularly receive tips.

175.    Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA because Defendants required Plaintiffs and tipped FLSA Collective Members to perform a substantial amount of non-tipped side work in excess of two (2) hours or twenty percent (20%) of their workdays.

176.    Defendants unlawfully kept and/or allowed managerial or supervisory employees to keep a portion of tips that Plaintiffs and tipped FLSA Collective Members earned from customers. 29 C.F.R. § 531.52.

177.    Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Members of their rights under the FLSA.

178.    Defendants' unlawful conduct has been willful and intentional. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Members the lawful minimum wage for all hours worked when Defendants knew or should have known such was due. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and FLSA Collective Members.

179.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to the FLSA.

180.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and FLSA Collective Members have suffered damages by being denied minimum wage and tips in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of

such amounts, liquidated damages, attorneys' fees and costs, interests, and other compensation pursuant to the FLSA.

181.   Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Members and the actual compensation paid to Plaintiffs and FLSA Collective Members should be in the possession and custody of Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

### SECOND CAUSE OF ACTION
### *Unpaid Wages and Tips in Violation of the New York Labor Law*

182.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

183.   At all times relevant, Plaintiffs have been employees of Defendants, and Defendants have been employers of Plaintiffs within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

184.   Defendants failed to pay Plaintiffs and Class Members the full and proper minimum wage to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations.

185.   Pursuant to the NYLL, Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, Defendants have been required to pay Plaintiffs and the Class the full minimum wage at a rate of (a) $7.25 per hour for all hours worked from February 2011 through December 30, 2013; (b) $8.00 per hour for all hours worked from December 31, 2013 through December 30, 2014; (c) $8.75 per hour for all hours worked from December 31, 2014 through December 30, 2015; and (d) $9.00 per hour for all hours worked from December 31, 2015 through December 30, 2016; (e) $11.00 per hour for all hours worked from December 31,

2016; (f) $13.00 per hour for all hours worked from December 31, 2017 through December 30, 2018; and (g) $15.00 per hour for all hours worked from December 31, 2018 through the present.

186.    Defendants have failed to notify Plaintiffs and Class Members of the tip credit in writing as required by the NYLL and the supporting New York State Department of Labor Regulations.

187.    Defendants required Plaintiffs and Class Members to perform a substantial amount of non-tipped side work in excess of two (2) hours or twenty percent (20%) of their workdays.

188.    Defendants unlawfully retained part of the gratuities received by Plaintiffs and Class Members in violation of NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

189.    Defendants unlawfully required Plaintiffs and Class Members to share the gratuities they received with managers, supervisors and non-tipped employees, in violation of NYLL Article 6, § 196-d and the supporting New York State Department of Labor Regulations.

190.    Defendants failed to pay spread-of-hour wages to Plaintiffs and Class Members for the workdays on which the interval between the beginning and the end of their shifts exceeded ten (10) hours, in violation of the NYLL.

191.    Defendants failed to furnish Plaintiffs and the Class with proper wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day; the name of the employer; any "doing business as" names used by the employer; the physical address

of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.

192.    Defendants failed to furnish Plaintiffs and the Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

193.    Defendants failed to keep, make, preserve, maintain, and furnish accurate records of the amounts of tips earned by Plaintiffs and Class Members as required by the NYLL and the supporting New York State Department of Labor Regulations.

194.    Defendants failed to properly disclose or apprise Plaintiffs and the Class of their rights under the NYLL and the supporting New York State Department of Labor Regulations.

195.    As a result of Defendants' willful violations of the NYLL, Plaintiffs and the Class are entitled to recover from Defendants their unpaid minimum wage, unpaid spread of hours, misappropriated tips, liquidated damages, statutory penalties, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NYLL.

### THIRD CAUSE OF ACTION
### *Discrimination and Retaliation in Violation of the NYSHRL*

196.    Plaintiff Violeta Markovic realleges and incorporates by reference all allegations in all preceding paragraphs.

197.    Plaintiff Violeta Markovic is an employee and a protected person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

198.    Defendants violated Plaintiff Violeta Markovic's statutorily protected rights under the NYSHRL, New York Executive Law, Article 15 §§ 290 *et seq*., by engaging in discriminatory and retaliatory employment practices.

199.    Defendants discriminated against Plaintiff Violeta Markovic in violation of the NYSHRL by subjecting Plaintiff to disparate treatment, including a hostile work environment, on the basis of her sex. Defendants fostered, condoned, accepted, ratified and/or otherwise failed to prevent or to remedy discriminatory and hostile work conditions.

200.    Defendants retaliated against Plaintiff Violeta Markovic on the basis of her protected activities under the NYSHRL by making Plaintiff's work more difficult, increasing scrutiny, and terminating Plaintiff's employment, after she made internal complaints about Defendants' discriminatory practice and hostile work environment.

201.    As a direct and proximate result of Defendants' unlawful discriminatory and retaliatory conduct in violation of the NYSHRL, Plaintiff Violeta Markovic has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

202.    As a direct and proximate result of Defendants' unlawful discriminatory and retaliatory conduct in violation of the NYSHRL, Plaintiff Violeta Markovic has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

203.     Defendants' unlawful discriminatory and retaliatory conduct was intentional, malicious, willful, and/or in reckless disregard of Plaintiff Violeta Markovic's protected rights under the NYSHRL, for which she is entitled to an award of punitive damages.

204.     Due to Defendants' violations of the NYSHRL, namely, employment discrimination on the basis of sex and retaliation for engaging in protected activities, Plaintiff Markovic is entitled to recover from Defendants: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs of bringing this action.

## FOURTH CAUSE OF ACTION
### *Discrimination and Retaliation in Violation of the NYCHRL*

205.     Plaintiff Violeta Markovic realleges and incorporates by reference all allegations in all preceding paragraphs.

206.     Plaintiff Violeta Markovic is an employee and a protected person within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

207.     Defendants violated Plaintiff Violeta Markovic's statutorily protected rights under the NYCHRL, Administrative Code of the City of New York § 8-107, by engaging in discriminatory and retaliatory employment practices.

208.     Defendants discriminated against Plaintiff Violeta Markovic in violation of the NYCHRL by subjecting Plaintiff to disparate treatment, including a hostile work environment, on the basis of her sex. Defendants fostered, condoned, accepted, ratified and/or otherwise failed to prevent or to remedy discriminatory and hostile work conditions.

209.     Defendants retaliated against Plaintiff Violeta Markovic on the basis of her protected activities under the NYCHRL by making Plaintiff's work more difficult, increasing scrutiny, and terminating Plaintiff's employment, after she made internal complaints about Defendants' discriminatory practice and hostile work environment.

210.    As a direct and proximate result of Defendants' unlawful discriminatory and retaliatory conduct in violation of the NYCHRL, Plaintiff Violeta Markovic has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

211.    As a direct and proximate result of Defendants' unlawful discriminatory and retaliatory conduct in violation of the NYCHRL, Plaintiff Violeta Markovic has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

212.    Defendants' unlawful discriminatory and retaliatory conduct was intentional, malicious, willful, and/or in reckless disregard of Plaintiff Violeta Markovic's protected rights under the NYCHRL, for which she is entitled to an award of punitive damages.

213.    Due to Defendants' violations of the NYCHRL, namely, employment discrimination on the basis of sex and retaliation for engaging in protected activities, Plaintiff Markovic is entitled to recover from Defendants: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs of bringing this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Members and the Class, respectfully request that this Court grant the following relief:

a.  Issuance of court-authorized notice to similarly situated employees regarding the pendency of a collective action pursuant to the FLSA;

b.  Certification of this case as a class action pursuant to Rule 23;

c.  Designation of Plaintiffs as representatives of the Class and counsel of record as Class Counsel;

d.  An award of unpaid minimum wage due under the FLSA and NYLL;

e.  An award of unlawfully retained tips due under the FLSA and NYLL;

f.  An award of unpaid spread-of-hours pay due under the NYLL;

g.  An award of liquidated damages as a result of Defendants' willful failure to pay wages and misappropriated tips, pursuant to the FLSA or NYLL;

h.  Statutory penalties for Defendants' failure to provide Plaintiffs and Class Members with proper wage notices, as required by the NYLL;

i.  Statutory penalties for Defendants' failure to provide Plaintiffs and Class Members with proper wage statements, as required by the NYLL;

j.  An order awarding relief to Plaintiff Violeta Markovic for Defendants' unlawful discriminatory and retaliatory conduct under NYSHRL and NYCHRL, including but not limited to economic, compensatory and punitive damages;

k.  Pre-judgment and post-judgment interest;

l.  Reasonable attorneys' fees and costs of this action;

m.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

n.  A declaratory judgment that the practices complained of herein are unlawful under the NYSHRL and NYCHRL;

o.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein; and

p.  Such other and further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated:  February 18, 2022             Respectfully submitted,

**BROWN, KWON & LAM LLP**

By:    <u>*/s/ Angela Kwon*         </u>

Angela Kwon, Esq. (AK7296)
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
akwon@bkllawyers.com
*Attorneys for Plaintiffs*