UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/26/2023
```

-------------------------------------------------------------------X
                                                                    :
VIOLETA MARKOVIC, and DARKO ILIC, *on behalf of*                    :
*themselves and others similarly situated*,                         :
                                                                    :
                                     Plaintiffs,                    :            22-cv-1412 (LJL)
                                                                    :
                    -v-                                             :          OPINION AND ORDER
                                                                    :
MILOS HY, INC. d/b/a ESTIATORIO MILOS and                           :
MILOS WINE BAR, MILOS, INC. d/b/a ESTIATORIO                        :
MILOS, and COSTAS SPILIADIS,                                        :
                                                                    :
                                     Defendants.                    :
                                                                    :
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendants Milos Hy, Inc. d/b/a Estiatorio Milos and Milos Wine Bar, Milos, Inc. d/b/a

Estiatorio Milos, and Costas Spiliadis (collectively, "Defendants") move, pursuant to Federal

Rule of Civil Procedure 12(b)(6), to dismiss the first amended complaint against them. *See* Dkt.

No. 38.

For the following reasons, the motion to dismiss is denied.

## BACKGROUND

For the purposes of this motion, the Court accepts as true the well-pleaded allegations of

the first amended complaint. Dkt. No. 34 ("First Amended Complaint" or "FAC").

Milos HY, Inc. operates two Greek restaurants in New York named Estiatorio Milos

Hudson Yards and Milos Wine Bar. *See id.* ¶ 28. Milos, Inc. operates a Greek restaurant in New

York named Estiatorio Milos Midtown. *Id.* ¶ 36. The three restaurants are referred to,

collectively, as the "Milos Restaurants." *Id.* ¶ 14. All of the Milos Restaurants operate under the

common trade name "Milos." *Id.* The Milos Restaurants are engaged in the business of operating Greek restaurants in New York City, and share a common trade name, logo, décor, and appearance. *Id.* ¶¶ 16, 18. The Milos Restaurants serve similar menu items and share common ingredients. *Id.* ¶ 19. The Milos Restaurants are jointly advertised on Defendants' website. *Id.* ¶ 20.

Defendants own and operate the Milos Restaurants as a single integrated enterprise, with a common business purpose, shared common ownership and management, interrelated operations, and a centralized system to control labor relations. *Id.* ¶ 15. Spiliadis is the individual owner and operator of the Milos Restaurants. *Id.* ¶¶ 17, 43. Milos Restaurants implement the same wage and hour policies and practices established by Spiliadis. *Id.* ¶ 21. At all relevant times, employees, food, and supplies were interchangeable and freely transferred among Milos Restaurants. *Id.* ¶ 22.

Plaintiffs Violeta Markovic ("Markovic") and Darko Ilic ("Ilic" and, with Markovic, "Plaintiffs") were employed by Defendants. *Id.* ¶ 24. Markovic was hired by Defendants on or around March 15, 2019 to work as a hostess at Estiatorio Milos Hudson Yards. *Id.* ¶ 73. Her employment was terminated on or around August 8, 2019. *Id.* ¶ 75. Starting in or around June 2019, until the end of her employment with Defendants, Markovic performed dual jobs at the restaurant as a hostess and a server, splitting her schedule equally between the two roles. *Id.* ¶ 74. Ilic was employed by Defendants as a sommelier at Estiatorio Milos Hudson Yards and Milos Wine Bar from in or around February 2019 until on or around September 30, 2019. *Id.* ¶ 80.

Markovic and Ilic, and employees of the Milos Restaurants who were similarly situated to them, were subject to the same wage and hour policies and practices. *Id.* ¶¶ 23, 85–86. Those

policies and practices involved a scheme pursuant to which managerial or supervisory employees of the Milos Restaurants kept a portion of the tips that Plaintiffs earned from customers in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). *Id.* ¶ 107. Both Markovic and Ilic worked in excess of 40 hours a week. *Id.* ¶¶ 76, 81. Defendants claimed a tip credit and paid Plaintiffs and others similarly situated at the same or similar hourly rates that were at all times less than New York's minimum wage. *Id.* ¶ 87. Throughout her employment, Markovic regularly worked six days a week, for a total of 65 hours a week, at a wage of $10.50 per hour as a server and $17.00 per hour as a hostess. *Id.* ¶¶ 76, 78. Ilic worked 50 hours per week throughout his employment with Defendants for a wage of $10.50 per hour. *Id.* ¶¶ 81, 83. Plaintiffs worked at least two hours of non-tipped side work every workday throughout their employment with Defendants. *Id.* ¶¶ 77, 82. Throughout Markovic's employment with Defendants, Defendants failed to keep accurate records of her time worked as a server versus her time worked as a hostess and frequently paid her $10.50 per hour for hours worked as a hostess, work for which she did not receive any tips. *Id.* ¶ 79.

Plaintiffs also allege that Defendants employed invalid tip policies and practices that resulted in missing tips and that deprived them of full and proper tip amounts each week. *Id.* ¶¶ 89–92. Under Defendants' tip pooling policies and practices, the tips earned by Plaintiffs and other employees were collected by the managers/supervisors and kept under their exclusive custody or control until the tips were distributed to employees. *Id.* ¶ 89. Plaintiffs regularly observed discrepancies and irregularities between Defendants' tip records and the tip amounts distributed to Plaintiffs and other tipped workers. *Id.* For example, Plaintiffs regularly experienced instances where the combined tips that Plaintiffs and other tipped employees received from Defendants were less than the amount they collectively earned from customers.

*Id.* ¶ 90.  When tipped workers were not paid any or a portion of their tips, they were told by managers that the tips went "missing" from the restaurant's safe, which was only accessible to the managers and owners.  *Id.*  Each time Plaintiffs or other tipped workers asked to see Defendants' tip records and sought clarification on how Defendants calculated the tip amounts distributed to tipped employees, Defendants refused to provide Plaintiffs with such records or information and, when the tipped workers complained about underpayment of tips, management threatened to "fire everyone and start over."  *Id.* ¶ 91.  As a result of Defendants' invalid tip policies and practices, Plaintiffs and other tipped employees at Milos Restaurants were not paid the full and proper tip amounts every week.  *Id.* ¶ 92.

Plaintiffs further allege that they were never paid their spread-of-hours premium when the interval between the beginning and end of their workdays exceeded ten hours, *id.* ¶ 93, that they did not receive proper notices of pay rate or pay day from Defendants at hire or before the changes in pay as required by the NYLL, *id.* ¶ 94, that they did not receive proper wage statements from Defendants stating their correct pay rate or tip credit rate, *id.* ¶ 95, and that they were not paid the lawful minimum wage due to an invalid tip credit deduction, *id.* ¶ 96.

Separately, Markovic alleges that she was subject to sexual harassment, discrimination on the basis of gender, and retaliation throughout her employment with Defendants.  *Id.* ¶¶ 111–26. The general managers at the Milos Restaurants directed her and other hostesses to flirt and physically touch the male "VIP" customers, to "shake your ass" when walking in front of the male customers, and to softly touch the arms and elbows of the male customers when walking them to their table.  *Id.* ¶ 112.  General managers openly asked Markovic and other female employees about their personal lives and made sexually inappropriate jokes and comments.  *Id.* ¶ 114.  One specific general manager pried into Markovic's dating life and commented about her

appearance, while another often shared with Markovic his sexual fantasies about other servers who worked in the restaurant.  *Id.*  Management at the Milos Restaurants condoned sexually inappropriate behavior including catcalls and unwelcome sexual remarks made by male workers. *Id.* ¶ 115.  When Markovic did not immediately comply with the general managers' commands concerning the male VIP customers or when she expressed her discomfort with their requests, the general managers punished her by giving her physically strenuous duties, bouncing her around from station to station, and assigning her to undesirable and/or less lucrative stations within the restaurant.  *Id.* ¶ 113.

In particular, in or around May 2019, a general manager named George, who was eager to please a particular male VIP customer, instructed Markovic to give the customer a massage. *Id.* ¶ 117.  When Plaintiff informed three other general managers of the incident and told them that it made her uncomfortable, the managers failed to take corrective action, laughed, and joked about the incident.  *Id.*  Subsequently, when Markovic approached one of those same general managers and expressed her discomfort at being directed to flirt and physically touch male customers, that manager became visibly irritated and told Markovic that he did not want to hear about it and that she should go away.  *Id.* ¶ 118.  After her complaints, Markovic's work environment deteriorated; she was treated with increased hostility and scrutiny to which others similarly situated were not subject.  *Id.* ¶ 119.  On multiple occasions, she attempted to speak to human resources about the sexual harassment and discrimination but she was repeatedly ignored at management's direction.  *Id.* ¶ 120.  In another incident in or around June 2019, another general manager stood physically close to Markovic behind a desk and started rubbing his crotch on her upper thigh.  *Id.* ¶ 121.  In or around July 2019, Markovic complained to a third general manager about the managers' sexually inappropriate language and behavior, after which that

manager started following her around the restaurant, scrutinizing her work, and threatening her with write-ups and termination. *Id.* ¶ 122. Finally, in or around August 2019, Defendants terminated Markovic's employment ostensibly because she took a personal day without providing sufficient notice, a policy that the Defendants had never enforced on any other employee. *Id.* ¶ 123. Markovic alleges that her employment was terminated because of her complaints about the hostile work environment at Milos Restaurants. *Id.* ¶ 126.

## PROCEDURAL HISTORY

Plaintiffs initiated this case by complaint filed on February 18, 2022. *See* Dkt. No. 1 ("Complaint"). On September 21, 2022, Defendants filed a motion to dismiss the Complaint for failure to state a claim for relief. Dkt. No. 31. Plaintiffs responded to the motion by filing the First Amended Complaint on October 12, 2022.[1] Dkt. No. 34. The FAC alleges claims for (1) unpaid wages and tips pursuant to Sections 3(m)(2)(B) of the FLSA, 29 U.S.C. §§ 201 *et seq.* and 29 C.F.R. § 531.52, *id.* ¶¶ 127–34 (First Cause of Action); (2) unpaid wages and tips in violation of the NYLL, §§ 650 *et seq.*, *id.* ¶¶ 135–48 (Second Cause of Action); (3) on behalf of Markovic, discrimination and retaliation in violation of the New York State Human Rights Law, New York Executive Law Article 15 §§ 290 *et seq.*, *id.* ¶¶ 149–57 (Third Cause of Action); and (4) on behalf of Markovic, discrimination and retaliation in violation of the New York City Human Rights Law, Administrative Code of the City of New York § 8-107, *id.* ¶¶ 158–66 (Fourth Cause of Action).

---

[1] In addition to Costa Spiliadis, the Complaint named Constantinos Spiliadis, Evdiriki Spiliadis, George Spiliadis, David Dangoor, and Ionna Sourias as individual defendants. *See* Dkt. No. 1. Plaintiffs filed a stipulation of voluntary dismissal as to those individual defendants pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). Dkt. No. 26-1. The Court granted that motion pursuant to its powers under Rules 15 and 21 of the Federal Rules of Civil Procedure as well as its inherent power. Dkt. No. 27. Those individual defendants were not included in the FAC.

On November 18, 2022, Defendants filed the instant motion to dismiss with a supporting memorandum of law and declaration.  Dkt. Nos. 38–40.  On December 16, 2022, Markovic and Ilic filed FLSA consent forms, consenting to be party plaintiffs to the case.  Dkt. Nos. 41–42. Plaintiffs filed their memorandum of law in opposition to the motion to dismiss and a supporting declaration on December 19, 2022.  Dkt. Nos. 43–44.  Defendants filed a reply memorandum in further support of the motion to dismiss on January 23, 2023.  Dkt. No. 47.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement."  *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [*i.e.*,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]."  *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

**DISCUSSION**

Defendants principally argue that Plaintiffs' federal claims under FLSA are time-barred on two separate grounds: (1) Plaintiffs failed to file FLSA consent forms until December 2022, well after the three-year period for filing collective actions based on willful violations of the FLSA; and (2) even if Plaintiffs' claims are considered individually and not as part of a collective action, the FAC fails to allege willful violations of the FLSA and hence Plaintiffs' claims are subject to only a two-year limitations period, which had expired by the time they filed the FAC.  Dkt. No. 39 at 5–8, Dkt. No. 47 at 2–4.  Defendants further argue that Plaintiffs fail to state a claim that the tip pool was unlawful or that the tips were misappropriated.  Dkt. No. 39 at 9–10, Dkt. No. 47 at 4–5.  Hence, they argue that because the federal claims must be dismissed, the Court should decline to exercise supplemental jurisdiction over the state law claims, including Markovic's discrimination claims.  Dkt. No. 39 at 10–11; Dkt. No. 47 at 7–8.  Alternatively, Defendants argue that, if the FLSA claims survive, the Court should dismiss or stay the case under the doctrine of *Colorado River* abstention.   Dkt. No. 39 at 11–16 (citing *Colorado River Water Conservation Dist.* v. *United States*, 424 U.S. 800, 817 (1976)); Dkt. No. 47 at 8–9.  Lastly, Defendants argue that Plaintiffs have failed to allege facts sufficient to establish that Spiliadis was their "employer" within the meaning of the FLSA or the NYLL.  *See*  Dkt. No. 39 at 17–19; Dkt. No. 47 at 6–7.  The Court addresses each argument in turn.

**I.**     **Defendants' Motion to Dismiss the FLSA Claims as Time-Barred**

Defendants' principal argument is that Plaintiffs' claims are time-barred for failure both to timely file the consent forms and, separately, for failure to plead willfulness.  Dkt. No. 39 at 1.  Plaintiffs do not specifically counter Defendants' argument that their consent forms were not timely filed.  Rather, they argue that they should be permitted to proceed individually, that the First Amended Complaint's factual allegations support a plausible inference of willfulness, and

that the three-year statute of limitation should apply.  Dkt. No. 43 at 7.  The Court first turns to Defendants' consent-form argument and then to their willfulness argument.

### A.      Failure to Timely File Consents to Become a Party

"A district court 'may dismiss a claim on statute-of-limitations grounds at the pleading stage if [the] complaint clearly shows the claim is out of time.'"  *Romero v. Manhattan & Bronx Surface Transit Operating Auth.*, 2022 WL 624451, at *3 (S.D.N.Y. Mar. 2, 2022) (quoting *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021)); *see Roeder v. J.P. Morgan Chase & Co.*, 523 F. Supp. 3d 601, 611 (S.D.N.Y. 2021), *aff'd*, 2022 WL 211702 (2d Cir. Jan. 25, 2022) (same).  Section 216(b) of the FLSA permits an employee to maintain an action against an employer "for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  The FLSA's statute of limitations provides that an action under the statute must "be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  *Id.* § 255(a).  Section 256 of the FLSA provides that:

> In determining when an action is commenced for purposes of section 255 . . . , an action . . . shall be considered to be commenced on the date when the complaint is filed; except that in the case of a collective or class action instituted under [FLSA], it shall be considered to be commenced in the case of any individual claimant–
>
> (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or
>
> (b) if such written consent was not so filed or if his name did not so appear–on the subsequent date on which such written consent is filed in the court in which the action was commenced.

*Id.* § 256.

9

Defendants argue that even if Plaintiffs alleged willful violations of the FLSA, their claims would be time-barred under Sections 255 and 256. *See* Dkt. No. 39 at 5–8, Dkt. No. 47 at 2–4. Plaintiffs styled both the complaint and the FAC as a "Class and Collective Action Complaint." *See* Dkt. Nos. 1, 34. They purport to bring the FLSA claims on behalf of a collective of "themselves and all similarly situated current and former non-exempt tipped employees (including but not limited to servers, runners, bussers, server assistants, bartenders, sommeliers and baristas) employed at Milos Restaurants owned, operated, and/or controlled by Defendants, from the date that is six (6) years prior to the filing of [the] Class and Collective Action Complaint until the date of final judgment in this matter, and who elect to opt-in to this action." Dkt. No. 1 ¶ 97; Dkt. No. 34 ¶ 53.

A cause of action accrues when the allegedly illegal employment practice occurs, and no later than the termination of such practice or the termination of the plaintiff's employment. *See Unexcelled Chemical Corp. v. United States*, 345 U.S. 59, 65 (1953) (stating that for purpose of statute of limitations under 29 U.S.C. § 255, a cause of action accrues when the plaintiffs were employed). Each Plaintiff ceased to be employed by the Milos Restaurants by the fall of 2019. Markovic's employment was terminated on August 8, 2019, *see* Dkt. No. 34 ¶ 75, and Ilic was employed by the Milos Restaurants until on or around September 30, 2019, *id.* ¶ 80. But, while Plaintiffs filed the complaint within the three-year time period for allegations of willful FLSA violations, Plaintiffs did not file FLSA consent forms, consenting to be party plaintiffs to the case, until December 16, 2022. *See* Dkt. Nos. 41–42. Defendants' argument thus suggests that, regardless of the date on which the complaint was filed, because it was styled as a collective action, it should not be deemed to have commenced until written consents were filed.

Defendants claim that, as a result, the case should not be considered to have been commenced until December 16, 2022, and Plaintiffs' FLSA claims should be considered to be time-barred.

The Court agrees that Plaintiffs cannot bring a collective action claim under the FLSA due to the late filing of the consent forms. The consent forms were filed after the statute of limitations had run, and thus Plaintiffs cannot maintain a collective action against Defendants. Nor could any other persons similarly situated to Plaintiffs participate in such a collective action. The Court does not agree, however, that the failure to file a written consent precludes Plaintiffs from pursuing this action on their own behalves when they filed the Complaint within the time period permitted for individual actions.

The Second Circuit has not yet addressed the effect of the failure to timely file a FLSA consent form on the individual claims of a named plaintiff in an action that is styled a "class and collective action." Courts elsewhere have adopted a variety of approaches and reached a variety of conclusions. The Seventh Circuit has held that the failure to file a consent in any action styled a class or collective action is not fatal to the named plaintiff's ability to pursue an individual action when the complaint, read favorably to the plaintiff, can be read to allege both individual and collective claims. *See Smith v. Pro. Transp., Inc.*, 5 F.4th 700, 702 (7th Cir. 2021). It has held that the action is deemed commenced for the individual upon the filing of the complaint. *Id.* Other circuit courts have presumed, without expressly discussing the issue, that an individual FLSA plaintiff commences an individual action, including for statute of limitations purposes, by filing a complaint "on behalf of herself and other similarly situated employees," without the need to file a formal consent. *See Mickles v. County Club Inc.*, 887 F.3d 1270, 1276 (11th Cir. 2018) (internal quotation marks and citation omitted); *see also Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 (5th Cir. 2008) ("[T]he FLSA allows an employee to bring a claim on behalf

of other similarly-situated employees, but the other employees do not become plaintiffs in the action unless and until they consent in writing."); *cf. Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 758 (4th Cir. 2011) ("[I]n a collective action under the FLSA, a named plaintiff represents only himself until a similarly-situated employee opts in as a party plaintiff by giving his consent in writing." (internal quotation marks and citation omitted))).  The Eighth Circuit, by contrast, has held that the failure of a named plaintiff in an action styled a collective action to file a consent precludes the named plaintiff from pursuing her individual claims.  In the view of that court, the plaintiff must affirmatively make clear on a timely basis that he intends to convert the collective action into an individual action.  *See Acosta v. Tyson Foods, Inc.*, 800 F.3d 468, 472 (8th Cir. 2015); *see also Gomez v. Tyson Foods, Inc.*, 799 F.3d 1192, 1194 (8th Cir. 2015) ("[A]n employee must file a written consent within the statute of limitations to proceed as a party plaintiff when a claim under the FLSA is pleaded as a collective action.").

District courts are similarly divided.  Some courts outside the Seventh and Eight Circuits have sided with the Seventh Circuit and have held that "[w]here the record reveals an intent to file an individual claim, and the individual claim is timely filed, it should be allowed to continue, notwithstanding the individual plaintiff[']s failure to timely file a consent to join the collective action."  *Depalma v. Scotts Co., LLC*, 2019 WL 2206087, at *4–5 (D.N.J. May 22, 2019) (citation omitted); *see also Smith v. Cent. Sec. Bureau, Inc.*, 231 F. Supp. 2d 455, 461 (W.D. Va. 2002) ("[Plaintiff] instituted the action 'individually and on behalf of others.'  The plain language of the aforementioned language is open only to one interpretation, namely, that [plaintiff] was attempting to proceed in a dual capacity."); *Morrison v. Columbus Fam. Health Care, LLC*, 2023 WL 3266785, at *3 (S.D. Ohio May 5, 2023) (If a court concludes that plaintiffs are not similarly situated for the purposes of a FLSA collective action, "the court de-

certifies the class, dismisses the opt-in plaintiffs without prejudice, and proceeds to trial on the named plaintiff[s]' individual claims") (internal quotation marks and citation omitted)).  Other districts have anticipated that their circuit would adopt the Eighth Circuit position.  *See Britt v. Baird Drywall & Acoustic, Inc.*, 2020 WL 6270910, at *3 (W.D. Va. Oct. 26, 2020) ("Given the subsequent development of the law on this issue, it is now more reasonable to conclude that . . . a dual capacity pleading, individually and on behalf of those similarly situated, cannot obviate the need for a consent to be filed separate from the complaint").  Still other courts have taken something of a middle position and held that a FLSA plaintiff can pursue a "dual capacity" suit only "if the complaint clearly put the employer and the court on notice of such."  *Carter v. Sungard Availability Servs., LP*, 2019 WL 1114896, at *3 (E.D. Pa. Mar. 11, 2019) (*quoting Matuska v. NMTC, Inc.*, 2012 WL 1533779, at *4 (D.N.J. Apr. 30, 2012)); *see also Carts v. Wings Over Happy Valley MDF, LLC*, 2023 WL 373175, at *10 (M.D. Pa. Jan. 24, 2023) ("Consideration of the above circumstances compels the Court to conclude that the Named Plaintiffs—to the extent the Third Circuit would recognize the potential for a dual-capacity claim in which a named plaintiff need not always file opt-in consent—never clearly indicated an intent to pursue a dual-capacity FLSA action.").

The most thorough analysis of the issue is by the Seventh Circuit in *Smith v. Professional Transportation, Inc.*, 5 F.4th 700.  There, the court held that the district court erred in dismissing the individual claims as well as the collective action claims of a complaint captioned "National Collective Action Pursuant to the FLSA" on the grounds that the two and three-year statute of limitations periods had expired before the named plaintiff filed a consent to become a party.  The court recognized that the language of Section 255(a) of FLSA was "somewhat awkward."  *Id.* at 703.  The court also stated that the written consent form requirement is designed to "assure the

court that the signers 'want to have their rights adjudicated in [a collective] proceeding or be represented by counsel chosen by other plaintiffs,'" and that written consent was "'important' because it protects plaintiffs from binding judgments obtained by counsel whom they may not fully trust." *Id.* (quoting *Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004)). The court viewed the question as whether "section 216(b) authorizes 'dual capacity' suits, in which a plaintiff sues simultaneously as a group representative and as an individual." *Id.* at 704. It held that that question was answered in the affirmative by Federal Rule of Civil Procedure 18(a), which permits the pleader to "join, as independent or alternative claims, as many claims as it has against an opposing party." *See Smith*, 5 F.4th at 704 (quoting Fed. R. Civ. P. 18(a)). Because the complaint, read in the light most favorable to the plaintiff, put the defendant on notice that the plaintiff was pursuing both individual and collective claims, the court concluded that it was error to dismiss the individual claims. *Id.* at 705. In such a situation, only the collective claims would be time-barred.

The Seventh Circuit's analysis in *Smith* is convincing. Section 216(b) gives an employee the right to pursue a FLSA claim both on behalf of himself and also on behalf of others similarly situated. 29 U.S.C. § 216(b). An action, however, does not become a collective action simply because the named plaintiff has denominated it as such. "[E]mployees . . . create a collective by opting-in to a backpay claim brought by a similarly situated employee." *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016). If a motion for conditional certification is not made or, if it is made and not granted or the action is "decertified," a plaintiff would still have the right to pursue the action individually. *See Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 460 (S.D.N.Y. 2011) ("If . . . 'the class is decertified, the claims of the opt-in plaintiffs are dismissed without prejudice, and the class representative may proceed on his or her own

claims.'" (quoting *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006))); *see also*

*Vecchio v. Quest Diagnostics Inc.*, 2020 WL 5604080, at *10 (S.D.N.Y. Sept. 18, 2020) (stating

that the remedy if the collective action is decertified is that "the opt-in plaintiffs are dismissed

without prejudice from the lawsuit"); *Foster v. City of New York, N.Y.*, 2018 WL 11323303, at

*9 (S.D.N.Y. June 18, 2018) (same).  The remedy is not that the lawsuit is dismissed.  It follows

that simply because Plaintiffs pled the right also to pursue the case as a collective action and

have failed for procedural reasons to satisfy one of the requisites to pursue a collective action,

they should not be deprived of the right to pursue their claims individually.

Plaintiffs plead both collective and class action claims and individual claims.  Both the

Complaint and the First Amended Complaint make clear that Plaintiffs are pursuing this case

both on behalf of themselves "individually" and on behalf of "similarly situated workers who

elect to opt in" pursuant to the FLSA.  *See* Dkt. No. 1 at 1, ¶ 1; Dkt. No. 34 at 1, ¶ 1; *see also*

Dkt. No. 1 ¶ 180; Dkt. No. 34 ¶ 133 ("As a result of Defendants' willful violations of the FLSA,

Plaintiffs and FLSA Collective Members have suffered damages by being denied tips in

accordance with the FLSA in an amount to be determined at trial.").  The Complaint and the

First Amended Complaint contain detailed allegations with respect to each Plaintiff individually.

Accordingly, just as in *Smith*, although the collective action claims of Plaintiffs are time-barred,

the individual claims are not.

**B.      Failure to Plead Willfulness**

Defendants next argue that the three-year statute of limitations is not available to

Plaintiffs because the FAC does not plead facts giving rise to a plausible inference of willfulness

and thus Plaintiffs cannot maintain their individual claims because the Complaint was not timely

filed.  Dkt. No. 39 at 7.  Plaintiffs counter that the factual allegations support a plausible

inference of willfulness, and so the three-year statute of limitation should apply.  Dkt. No. 43 at

7.  The Court agrees with Plaintiffs.

A plaintiff seeking to invoke the three-year exception to the FLSA's statute of limitations must "allege facts that permit a plausible inference that the defendant willfully violated the FLSA for that exception to apply." *Whiteside*, 995 F.3d at 323.  An employer willfully violates the FLSA "when it 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by' the Act.'"  *Id.* at 324 (quoting *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009)).  Willful conduct is "conduct that is not merely negligent." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  Moreover, "a conclusory allegation that a defendant acted willfully, without factual support to back up that allegation, is insufficient to entitle Plaintiffs to the longer limitations period."  *Romero*, 2022 WL 624451, at *5 (internal citations omitted).

Plaintiffs have stated a claim that the FLSA violation was willful and may therefore invoke the three-year exception to the FLSA statute of limitations.  Plaintiffs do not just make conclusory allegations of willfulness or allege post-hoc that the pay that they received violated the FLSA.  *Compare Whiteside*, 995 F.3d at 324 (noting that plaintiff did not allege "that he ever complained about his situation to his managers").  They allege that they contemporaneously raised concerns that Defendants' tip pool and distribution policies resulted in the underpayment of tips.  In particular, the FAC alleges that tipped workers at the Milos Restaurants "complained about the discrepancies and underpayment of tips."  Dkt. No. 34 ¶ 91.  The employees were told that "the collected tips went 'missing' from the restaurant's safe that was accessible to only the managers and owners."  *Id.* ¶ 90.  When they "requested to see Defendants' tip records and sought clarification on how Defendants calculated the tip amounts distributed to tipped workers, Defendants refused to produce Plaintiffs with such records or information."  *Id.* ¶ 91.  Further,

16

when they complained about the discrepancies, "management threatened to 'fire everyone and start over.'"  *Id.*  From the complaints made to management, it is plausible to conclude that Defendants were aware of Plaintiffs' concerns that Defendants' tip policies and procedures were unlawful.  From Defendants' responses, a factfinder could conclude that Defendants were aware that those tip policies and procedures violated the law or at least Defendants acted with reckless disregard as to whether the conduct violated the law.  *See Pollis v. New School for Social Research*, 132 F.3d 115, 119–20 (2d Cir. 1997) (affirming finding of willfulness under Equal Pay Act ("EPA") where plaintiff complained over several years about discrepancies between her salary and the salaries of male professors and the responses she received indicated an awareness that her salary was below that of comparable male professors); *Santiago v. ACACIA Network, Inc.*, 2022 WL 6775835, at *6 (S.D.N.Y. Oct. 10, 2022) (finding willful violation of the EPA where plaintiff complained on several occasions to employer about the disparate pay between her and her male colleagues but her situation did not change); *Storrs v. Univ. of Cincinnati*, 2018 WL 684759, at *4 (S.D. Ohio Feb. 2, 2018) (evidence of complaints supports finding of willful violation of EPA).[2]

Defendants argue that the FAC does not allege willfulness because Plaintiffs do not allege that they personally complained to the managers about the tip policies.  *See* Dkt. No. 47 at 4.  They underline and put in bold the allegation that it was "other tipped workers" who were told by the managers that collected tips went missing from the restaurant's safe and who were threatened with termination when they complained about the discrepancies and underpayment of tips.  *Id.*  But Defendants cite no case for the proposition that only a complaint by the employee

---

[2] Section 255(a) of Title 29—which extends the statute of limitations from two to three years for "a cause of action arising out of a willful violation"—applies both to the FLSA and to the EPA. *McLaughlin*, 486 U.S. at 131.

who also later chooses to bring suit can provide evidence of willfulness.  Such a rule of law would permit culpable defendants to escape liability merely because the individual who made the defendants aware of their unlawful conduct elected not to go through the process and take on the burden of bringing a lawsuit in federal court.  It would permit a wily defendant, by paying off the complaining employee, to avoid a lawsuit for its knowing violation of the labor protections afforded to others by law.  The willfulness inquiry does not turn upon the specific identity of the complaining witness and whether she later decides to file suit.  It turns upon whether the employer *knew* that its conduct was unlawful or acted with reckless disregard as to its lawfulness regardless the source of the employer's knowledge.  *See Whiteside*, 995 F.3d at 323.  Here, Plaintiffs plausibly allege that the conduct that victimized them was part of an employment practice to which all employees were subject—there being a single tip pool.  Plaintiffs allege that Defendants were put on notice that their conduct violated the law and chose to disregard that notice and to threaten retaliation.  It is irrelevant at this stage that the complaints came from individuals other than Plaintiffs.  Plaintiffs have pleaded enough to show that Defendants' conduct was willful.[3]

---

[3] The cases relied upon by Defendants are distinguishable.  In *Whiteside v. Hover-Davis, Inc.*, the plaintiff asked the "[c]ourt to infer willfulness from the mere fact that he was asked for a period of time to perform job responsibilities typically performed by non-exempt employees even though he was classified as exempt."  995 F.3d at 324.  The Second Circuit held that the complaint failed to allege that defendants "acted in *any* manner suggesting an awareness that their actions violated or could violate the FLSA."  *Id.* (emphasis in original).  In *Sanchez v. L'OrealUSA, Inc.*, 2022 WL 1556402 (S.D.N.Y. May 17, 2022), *Malcolm v. City of New York*, 2022 WL 684408 (S.D.N.Y. Mar. 8, 2022), and *Romero v. Manhattan & Bronx Surface Transit Operating Authority*, 2022 WL 624451, the plaintiffs made only conclusory allegations of willfulness without alleging any facts to support that conclusion.  *See Sanchez*, 2022 WL 1556402, at *5 ("The Amended Complaint includes only conclusory assertions that Defendant, as a large company, was aware of its overtime obligations and had a policy or practice of failing to meet them, without describing what that policy or practice is."); *Malcolm*, 2022 WL 684408, at *3 (S.D.N.Y. Mar. 8, 2022) ("That Malcolm, in his role as ADW, and unknown 'others' 'advised' some unknown other individual(s) about DOC's allegedly unlawful conduct is both

II.      **Defendants' Motion to Dismiss for Failure to State a Claim**

Defendants argue that the FAC fails to allege a violation of the FLSA because it does not "identify a *single* manager or supervisor who participated in the tip pool or who retained tips; . . . a *single factual* instance in which these unspecified 'managers/supervisors' unlawfully retained tips; or a *single factual* instance in which Plaintiffs' tips were not paid to them." Dkt. No. 47 at 5 (emphasis in original). However, a FLSA complaint need not plead a violation with particularity, as under Federal Rule of Civil Procedure 9(b). *See Fakir v. Skyrise Rock Corp.*, 2016 WL 7192095, at *2 (S.D.N.Y. Dec. 12, 2016) ("None of [plaintiff's] claims, under FLSA . . . must be held to heightened standard of Rule 9(b)."). It is sufficient that the FAC alleges facts that make it plausible that Defendants violated the FLSA and that create the "reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556.

Plaintiffs have pleaded sufficient facts to "cross the line from the conceivable to plausible." *Twombly*, 550 U.S. at 570. Under the FLSA, "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B); *Keawsri v. Ramen-Ya Inc.*, 2021 WL 3540671, at *15 (S.D.N.Y. Aug. 10, 2021). Plaintiffs allege that throughout their employment they and other tipped workers regularly experienced underpayment of tips because of actions taken by Defendants. *See* Dkt. No. 34 ¶ 89. They also allege that the managers and owners collected the tips when they were earned, and kept the tips under their exclusive custody or control until they were

---

conclusory, and much too general, to plead willfulness"); *Romero*, 2022 WL 624451, at *5 (finding willfulness was not plausibly pled where complaint alleged in conclusory fashion that defendants' violations of FLSA were done in a willful and bad faith manner).

redistributed to the employees. *Id.* ¶ 89. They further allege that, prior to redistribution of tips, Defendants' owners and manager were the only people who had access to the collected cash tips in the restaurant's safe. *Id.* ¶ 90. Plaintiffs need not allege which of the owners and/or managers took the missing tips from the safe in order to state a claim. It is sufficient that they plausibly allege that the amount of tips collected exceeded the amount of tips distributed and that the only potential recipients of the missing tips was a manager or owner. Plaintiffs have thus stated a claim for relief.[4]

## III.   Abstention

Defendants next argue that the Court should dismiss Plaintiffs' claims or, in the alternative, stay those claims, in deference to a proceeding pending in New York State court, under the doctrine of *Colorado River* abstention. Dkt. No. 39 at 11–16. Plaintiffs counter that abstention is generally disfavored and only appropriate in extraordinary circumstances, not present here. Dkt. No. 43 at 7–16.

The argument is based on a putative class action pending in New York State court, *Danilo Mera, et al. v. Milos HY, Inc.*, Index No. 150880 (N.Y. County) (the "State Court Action").[5] The State Court Action seeks to recover, on behalf of a class of non-exempt tipped workers employed by certain defendants, including Defendants here, in the past six years, minimum and overtime wages due to the alleged implementation of an unlawful tip credit system. *See generally* Dkt. No. 40-2. The plaintiffs in the State Court Action allege that the tip credit is invalid because the defendants:

---

[4] Because the Court finds that Plaintiffs' individual FLSA claim survives dismissal, Defendants' argument that there is no basis for supplemental jurisdiction over Plaintiffs' state law claims, *see* Dkt. No. 39 at 10–11, fails.

[5] The State Court Action was filed after another plaintiff filed a federal action in this District against these same Defendants, and then voluntarily withdrew the case for want of a federal claim. *See Mera, et al v. Milos HY, Inc.*, Case No. 20-cv-1138 (LGS) (S.D.N.Y. 2020).

(i) failed to properly provide tip credit notice; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties exceeding twenty percent (20%) of the total hours worked each workweek; (iii) failed to accurately track daily tips earned; (iv) implemented an invalid tip pool in which managers and non-tipped employees participated in the tip pool; (v) retained tips, and (vi) failed to provide a proper wage statement with every payment of wages informing Plaintiffs the amount of tip credit deducted for each pay period in violation of the NYLL.

*Id.* ¶¶ 28, 45.

The complaint in the State Court Action was filed on January 28, 2022, one month before the Complaint in this case was filed. *See* Dkt. No. 44-1. Defendants answered the complaint on November 17, 2022. *Id.* No class has yet been certified in the State Court Action. *Id.*

"Abstention is a narrow exception to the generally broad duty of federal courts to exercise jurisdiction." *Planned Parenthood of Dutchess-Ulster, Inc. v. Steinhaus*, 60 F.3d 122, 126 (2d Cir. 1995). "Where a federal court has subject matter jurisdiction, it has a 'virtually unflagging obligation to exercise that jurisdiction,' even if an action concerning the same matter is pending in state court." *Mochary v. Bergstein*, 42 F.4th 80, 84 (2d Cir. 2022) (quoting *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 327 (2d Cir. 1986)).

Federal courts may abstain from exercising jurisdiction over an action for which there is a parallel state court proceeding, based on considerations of "wise judicial administration [and] giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). The burden of persuasion is with the party seeking abstention. *See Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 210 (2d Cir. 1985). *Colorado River* abstention is only warranted in "exceptional circumstances." *Colorado River*, 424 U.S. at 813.

*Colorado River* abstention permits dismissal only in the rare case when (1) the relevant

state and federal actions are "concurrent" or "parallel" and (2) evaluation of a six-factor test

weighs in favor of abstention.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

460 U.S. 1, 16 (1983); *DDR Constr. Servs. Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 644

(S.D.N.Y. 2011).  In order to determine whether to abstain under *Colorado River*, a court starts

by determining whether the concurrent federal and state proceedings are "parallel" in nature.  *See*

*Fernandez v. City of New York*, 2017 WL 2894144, at *2 (S.D.N.Y. July 7, 2017) (citing

*Dittmer v. Cty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)).  Federal and state proceedings are

"parallel" for abstention purposes when "substantially the same parties are contemporaneously

litigating substantially the same issue in another forum."  *Niagara Mohawk Power Corp. v.*

*Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (internal quotation

marks and citation omitted).  Perfect symmetry is not required.  *See Sunwealth Glob. HK Ltd. v.*

*Pinder Int'l, Inc.*, 2021 WL 1145245, at *7 (S.D.N.Y. Mar. 23, 2021).  Rather, "parallelism is

achieved where there is a substantial likelihood that the state litigation will dispose of *all* claims

presented in the federal case."  *Shields v. Murdoch*, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012)

(emphasis in original) (internal quotation marks and citation omitted).

> Only if the court determines that the two actions are parallel, does the court then consider

six factors in determining whether abstention is warranted under *Colorado River*:

> (1) whether the controversy involves a res over which one of the courts has assumed
> jurisdiction, (2) whether the federal forum is less inconvenient than the other for
> the parties, (3) whether staying or dismissing the federal action will avoid
> piecemeal litigation, (4) the order in which the actions were filed, and whether
> proceedings have advanced more in one forum than in the other, (5) whether federal
> law provides the rule of decision, and (6) whether the state procedures are adequate
> to protect the plaintiff's federal rights.

*Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001)

(internal citations omitted).  "No one factor is necessarily determinative; a carefully considered

judgment taking into account both the obligation to exercise jurisdiction and the combination of

factors counselling against that exercise is required." *Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006) (quoting *Colorado River*, 424 U.S. at 818–19). The balance of these factors is "heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16.

This case and the State Court Action are not parallel. They involve different parties and seek different relief. Resolution of the State Court Action would not dispose of all of the claims presented in the federal case. The State Court Action, as currently framed, is on behalf of ten individual litigants. *See* Dkt. No. 40-2 at 1. Plaintiffs here are not parties to that action. Accordingly, a resolution in favor of Defendants in that case would not preclude Plaintiffs from litigating this case; Plaintiffs have a right to litigate the case separately. *See Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 146 (2d Cir. 2005) ("[I]ssue preclusion applies where . . . the party [opposing the application of issue preclusion, *i.e.*, the Plaintiffs in this scenario] had a full and fair opportunity to litigate the issue."). Moreover, although the issue is somewhat closer, it is also not clear that a resolution in favor of the state court plaintiffs (in a case in which Plaintiffs themselves are not a party) would preclude Defendants from re-litigating the issues here. *See Premier Elec. Const. Co. v. Nat'l Elec. Contractors Ass'n, Inc.*, 814 F.2d 358, 367 (7th Cir. 1987) ("[C]lass members who opt out may not claim the benefits of the class's victory."); *Mario Valente Collezioni, Ltd. v. AAK Ltd.*, 2004 WL 724690, at *5 (S.D.N.Y. 2004) ("[W]here plaintiff seeks to make offensive use of collateral estoppel, the approach of the Supreme Court is 'to grant trial courts broad discretion to determine when it should be applied.'" (quoting *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 332 (1979))); Restatement (Second) of Judgments § 29 (1982) cmt. d ("A person in such a position that he might ordinarily have been expected to join as plaintiff in the first action, but who did not do so, may be refused the benefits

of 'offensive' issue preclusion where the circumstances suggest that he wished to avail himself of the benefits of a favorable outcome without incurring the risk of an unfavorable one.  Such a refusal may be appropriate where the person could reasonably have been expected to intervene in the prior action."); *see also id.* § 42 cmt. d, ex. 6 ("[I]n the pre-trial proceedings notice is directed to all members of the class, giving them opportunity to opt out of the action; B . . . does so.  B is not precluded by a judgment in favor of C, nor, if the judgment is against C, may [B] invoke the benefit of preclusion as to issues determined in the action.").

Even if the Court found that the two cases were parallel, abstention would not be warranted under the six *Colorado River* factors.  Defendants concede that the first two factors are inapplicable in this case.  *See* Dkt. No. 39 at 14.  There is no res or property involved in either action and the federal forum is not inconvenient.  As for the third factor, it is significant that this case does not involve the "problems of issue preclusion and the lack of availability of preclusion against any plaintiffs or defendants only involved in one of the actions" that the court in *Garcia v. Tamir*, 1999 WL 587902 (S.D.N.Y. Aug. 4, 1999), found rendered "piecemeal litigation concerns . . . particularly severe."  *Id.* at *7; *see also Casias v. Sw. Med. Assocs.*, 2004 WL 7337695, at *3 (D.N.M. July 16, 2004) (following *Garcia v. Timar*).  In *Garcia*, the same plaintiffs who initiated a FLSA collective action case in federal court also filed a New York Labor Law putative class action in New York state court based on identical factual allegations.  1999 WL 587902, at *2.  The dangers of piecemeal litigation and the risk of gamesmanship was apparent from the identity of the issues under the FLSA and the NYLL, and the "difference between the class-action opt out and opt-in procedures in the two courts."  *Id.* at *6.  An absent class member in state court could avoid becoming a member of the collective in federal court simply by inaction.  A person who filed a joinder in the federal court would be

bound by an adverse finding in the federal court while the same person who did not file a joinder would not be.  "[I]f issues of fact [we]re determined in [federal] Court first, the state court w[ould] then be faced with the problem of having to preclude these issues in relation to some plaintiffs, while fully relitigating these issues for other plaintiffs. . . . The danger of inconsistent findings on defendants' obligations in this scenario [wa]s apparent." *Id.*

In this case, however, there is no risk of piecemeal litigation and gamesmanship from the difference between a FLSA collective action and a class action brought in state court.  Because of Plaintiffs' tardy filings of their consents, they have eschewed the right to bring this case as a FLSA collective action.  *See supra* pp. 10–11.  To be sure, there is a risk that a class in the State Court Action will be certified and that Plaintiffs here will choose not to opt out but to remain members of that class.  But even in that case, there would be no risk of inconsistent verdicts.  If this case goes first and the Court makes a final determination on Plaintiffs' federal and state law claims, the rules of res judicata would preclude them from participating in the state court class action and relitigating those claims there.  *See Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 193 (2d Cir. 2008) (Claim preclusion, "[u]nder New York law [provides that] a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." (internal quotation and citation omitted)); *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) (noting that the standards for res judicata are identical under New York and federal law).  Regardless whether Plaintiffs win or lose here, the rules of claim preclusion would apply.  *See Barrington v. New York*, 806 F. Supp. 2d 730, 742 (S.D.N.Y. 2011) ("[C]laim preclusion does not turn on whether the plaintiff has won or lost the prior action because 'the exception [on when claim preclusion does not apply] is not based on the relative success of the plaintiff in the initial proceeding, but on the nature of the

initial proceeding itself.'" (first quoting *Burgos v. Hopkins*, 14 F.3d 787, 792 (2d Cir. 1994), and then quoting *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir.1986))).  And the same would be true if Plaintiffs do not opt out of a class certified in the State Court Action and the state case goes first.  And this outcome would be limited to the two Plaintiffs here, not to an undefined and potentially large group of opt-in plaintiffs like in *Garcia*.  There may be some risk of duplication of effort.  But that risk is endemic to every case where a plaintiff who is a putative class member chooses not to wait until a decision to certify a class and files his or her own claim separately.  Any risk of duplication of effort can be addressed by wise case management including (if appropriate) the sharing of discovery across cases.[6]  It does not justify the Court at this early stage, even before a class is certified in state court, preventing Plaintiffs from prosecuting their individual claims in this Court.

In terms of the fourth *Colorado River* factor, the State Court Action was filed before this federal case.  But courts in this district have held that the first-to-file doctrine only applies "where there is concurrent *federal* litigation, not where a federal court contends with concurrent state litigation."  *Port Auth. of N.Y. & N.J. v. Kraft Power Corp.*, 2012 WL 832562, at *1 (S.D.N.Y. Mar. 13, 2012); *see also Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 517 (S.D.N.Y. 2013) (declining to transfer plaintiff's case to state court, pursuant to the first-to-file doctrine, when defendants had commenced litigation against plaintiff prior to the federal action); *C Fink Family Tr. ex rel. Landau v. Am. Gen. Life Ins. Co.*, 2011 WL 1453793, at *1 (S.D.N.Y. Apr. 7, 2011) (finding that the first-filed rule was not dispositive for determining whether to dismiss a federal case in favor of a concurrent state court action); *Alpine Grp., Inc. v. Johnson*, 2002 WL

---

[6] The Court has not made any determination regarding coordination between this action and the State Court Action nor has it been asked to do so.

10495, at *4 (S.D.N.Y. Jan. 3, 2002) ("It is important to note that the 'first to file' rule does not control in this matter because only one of the two actions is a federal action."); *Radioactive, J.V. v. Manson*, 153 F. Supp. 2d 462, 473 (S.D.N.Y. 2001) ("The first-to-file doctrine applies to concurrent federal litigation—not concurrent state/federal litigation."); *Sunwealth Glob. HK Ltd.*, 2021 WL 1145245, at *5 ("[T]he weight of authority in this Circuit is that the first-filed rule only applies when a Court is faced with concurrent federal actions.").

The fifth Colorado River factor considers the rule of decision in the case. "'When the applicable substantive law is federal, abstention is disfavored,' and, in fact, even 'the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex.'" *Dalzell Mgmt. Co., Inc. v. Bardonia Plaza, LLC*, 923 F. Supp. 2d 590, 601 (S.D.N.Y. 2013) (quoting *Vill. Of Westfield v. Welch's*, 170 F.3d 116, 121 (2d Cir. 1999)). The applicable substantive law in this case, for at least some of Plaintiffs' claims, is federal law, thus favoring an exercise of federal jurisdiction.

Lastly, "a federal court must determine 'whether the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.'" *Dalzell Mgmt. Co., Inc.*, 923 F. Supp. 2d at 602 (quoting *Vill. Of Westfield*, 170 F.3d at 124). Here, since the Plaintiffs are not party to the State Court Action, there is a serious question about whether the state procedures are adequate to protect the Plaintiffs' federal rights. Even if this question was answered in the positive, the adequacy of the state court forum "only makes this factor neutral." *Id.* Together, the weighing of all six factors results in an outcome favoring the exercise of federal jurisdiction.[7]

---

[7] Separately, the fact that the Plaintiffs' New York state class action claims involve litigants who would not otherwise be before the federal court (due to Plaintiffs' failure to timely certify a FLSA collective action claim) does not impact the Court's conclusion that it should exercise

It is thus appropriate for this Court to exercise jurisdiction over Plaintiffs' claims.

## IV.    Motion to Dismiss Spliadis

Finally, Defendants move to dismiss Plaintiffs' claims against the individual defendant, Spliliadis, for failure to state a claim for relief.  Defendants argue that the FAC "is devoid of any non-conclusory allegations suggesting that Mr. Spiliadis exercised any degree of control over the particular Milos location that employed Plaintiffs, or that he otherwise had any direct relationship of control over the terms and conditions of Plaintiffs' employment."  Dkt. No. 39 at 18–19.  Defendants also argue that the same deficiencies are also fatal under the NYLL.  *Id.* at 19.

"Employer" is defined under Section 203(d) of the FLSA as "any person acting directly or indirectly in the interests of an employer in relation to an employee."  29 U.S.C. § 203(d).  The definition of "employ" under the FLSA "includes to suffer or permit to work."  *Id.* § 203(g).  "The Second Circuit treats the term 'employer' pursuant to the FLSA as a 'flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances.'"  *Lopez v. Pizzeria, Inc.*, 2021 WL 1164336, at *4 (quoting *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 141–42 (2d Cir. 2008)).  The Second Circuit uses the "economic reality" test to determine the scope of employment—that is, whether an entity constitutes an employer—under Section 203(d).  *See Herman v. RSR Sec. Servs.*, 172 F.3d 132, 139 (2d Cir. 1999).  The test

---

supplemental jurisdiction over Plaintiffs' state court claims.  District courts can exercise supplemental jurisdiction over claims that involve "the same case or controversy," and such claims can involve "the joinder or intervention of additional parties."  28 U.S.C. § 1367(a).  As the Second Circuit has stated, "[T]he fact that there are more class members in the state law class action than those in the FLSA collective action should not lead a court to the conclusion that a state claim substantially predominates over the FLSA action, as section 1367(c) uses that phrase.  Predomination under section 1367 generally goes to the type of claim, not the number of parties involved."  *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 248 (2d Cir. 2011) (internal quotation marks and citation omitted).

requires a court to consider "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)).  Further, "[t]he NYLL uses the same definition of an employer" as the FLSA.  *Bravo v. Established Burger One LLC*, 2013 WL 5549495, at *5 (S.D.N.Y. Oct. 8, 2013).

A person who exercises operational control over a business, including with respect to the conditions of employment cannot insulate himself from liability by inserting a manager into his relationship with an employee.  "[N]either the FLSA nor NYLL limit personal liability to a single individual employer."  *De Quan Lu v. Red Koi, Inc.*, 2020 WL 7711410, at *7 (S.D.N.Y. Dec. 29, 2020).  A person need not "be responsible for managing plaintiff employees—or, indeed, . . . have directly come into contact with the plaintiffs, their workplaces, or their schedules," to be an employer under FLSA.  *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013); *see also Henao v. Parts Auth., LLC*, 2021 WL 2784528, at *6 (S.D.N.Y. July 2, 2021) ("The law does not require that an individual directly interact with employees to be considered their employer under FLSA."); *De Quan Lu*, 2020 WL 7711410, at *6 (same).  Nor need he or she "have been personally complicit in FLSA violations; the broad remedial purposes behind the statute counsel against such a requirement.  The statute provides an empty guarantee absent a financial incentive for individuals with control, even in the form of delegated authority, to comply with the law."  *Catsimatidis*, 722 F.3d at 110.

The vast majority of Plaintiffs' allegations are boilerplate that merely parrot the factors set forth in the economic reality test.  Plaintiffs allege that Spiliadis is the owner and operator of

the Milos Restaurants and at all relevant times has been a principal of each of the corporate Defendants. *See* Dkt. No. 34 ¶¶ 43–44.  They allege that Spiliadis has had the power to (i) fire and hire employees, (ii) set their work schedules, (iii) determine their rate and method of pay, and (iv) otherwise control the terms and conditions of their employment at Milos Restaurants. *Id.* ¶ 45.  Further they allege that at all relevant times, Spiliadis had the power to maintain employment records, including time and/or wage records of employees at Milos Restaurants, *id.* ¶ 47, and had ultimate authority over personnel or payroll decisions and employment policies, practices and procedures at Milos Restaurants, *id.* ¶ 50.  He had the power to prevent or stop any unlawful pay practices that harmed Plaintiffs and similarly situated employees.  *Id.* ¶ 51.

The fact that a person is an owner or officer of a company does not alone make that person an employer under FLSA.  *See Ramen-Ya Inc.*, 2021 WL 3540671, at *7 (citing *Catsimatidis*, 722 F.3d at 109).  Nor does the fact that an owner has certain powers that come with ownership make the person an employer under the statute.  *See Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 311 (S.D.N.Y. 2011) ("[P]laintiffs' reliance on [defendant's] status as sole shareholder [of the business] . . . as well as on actions she took solely in that capacity [does not make her an] employer under the FLSA, [for which] 'the overarching concern is whether the alleged employer possessed the power to control the workers in question.'" (quoting *RSR Sec. Servs. Ltd.*, 172 F.3d at 139)).  Plaintiffs must allege that the individual defendant had "operational control" over employment matters, *i.e.*, "an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment."  *Catsimatidis*, 722 F.3d at 109.  The test requires "some degree of individual involvement in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation."  *Id.*  "A person exercises

operational control over employees if his or her role within the company, *and* the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* at 110 (emphasis added). An absentee owner, for example, or an owner whose role is limited to matters unrelated to employment, is not an employer under FLSA. *Cf. Lin v. Great Rose Fashion, Inc.*, 2009 WL 1544749, at *14 (E.D.N.Y. 2009) (finding that defendant was an "employer" under FLSA because she exercised a degree of control over the workers commensurate with the role of an employer even when her parents were the absentee, nominal owners of the business).

Plaintiffs' allegations, while thin, are sufficient at this stage to qualify him as an "employer." Plaintiffs allege that Spiliadis hired the general managers at Milos Restaurants and had ultimate authority over staffing decisions. *Id.* ¶ 46. Plaintiffs also allege generally that "Spiliadis has been actively involved in managing the day-to-day operations of Milos Restaurants." *Id.* ¶ 48. Most importantly, Plaintiffs also allege that "[a]t all relevant times, . . . Spiliadis regularly visited Milos Restaurants to ensure that the business is operating efficiently and profitably, and supervised and instructed management and employees regarding their job duties while he was there." *Id.* ¶ 49. They add, "[f]or example, when . . . Spiliadis observed that an employee is performing any task incorrectly, he would rebuke them and/or their managers, and corrected any inadequacy in the service provided by staff to customers" *Id.* Reading the allegations together, it is plausible that Spiliadis possessed control over the operations of the Milos Restaurants in a manner that related to Plaintiffs' employment and thus it is plausible that Spiliadis qualifies as an employer under the FLSA.

**CONCLUSION**

The motion to dismiss is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 31, 38.[8]


SO ORDERED.

Dated: July 26, 2023
      New York, New York                              _____
                                                        LEWIS J. LIMAN
                                                      United States District Judge

---

[8] The motion to dismiss the original complaint was mooted by the filing of the First Amended Complaint.  *See* Dkt. Nos. 31, 34.  Thus, that motion is denied as moot.